The first case of the morning called 209-106, State of Illinois, versus Michael Doherty. On behalf of the Apple Watch, Mr. Dwayne Douglas. On behalf of the Apple Leaf, Ms. Sherry Wong. Good morning, Mr. Douglas. Step forward, please. May it please the Court. Counsel. My client, after a jury trial, was committed pursuant to the sexually violent person condemned to death. And we have taken appeal, and I'm alleging that there are three issues, three contentions of error. And I assert that the trial court abused its discretion in three ways. First, in permitting testimony from the experts regarding a provisional diagnosis of paraphernalia. Two, in failing to disclose or permitting testimony when there was an opinion that was not disclosed, pursuant to Supreme Court Rule 213-F. My third contention of error is that there was evidence of crimes permitted which were not sexually violent offenses. I'm going to start with the first contention of error regarding the provisional diagnosis of paraphernalia. And this was admitted at trial through the testimony of Drs. Levinson and Quackenbush. I think first you have to look at what the act provides for, and what it provides for is this, is that the state has to prove, firstly, that my client had been convicted of a sexually violent offense or adjudicated delinquent or found not guilty by reason of insanity, but for our purposes, we'll say, convicted of a sexually violent offense. And secondly, that he's dangerous because he suffers from a mental disorder. And because that disorder makes it substantially probable that he will engage in acts of sexual violence. I think we all agree that that's what the act provides for. My quarrel with the trial court permitting evidence of the provisional diagnosis of paraphernalia is because a provisional diagnosis of a mental disorder is not co-equal with actually suffering from a mental disorder. And that is what the state needs to prove. That's what the state must prove. The general assembly could have provided, but did not, that a person is subject to commitment if they suffer from a mental disorder or there's a provisional diagnosis of a mental disorder. Counselor, am I correct in thinking that there has to be two elements or factors? One, that a respondent or defendant has some dysfunction in the area of paraphernalia? But there's a reasonable probability that that individual packed out in an antisocial or a criminal manner? Essentially, yes. I would say in order for this evidence to be admitted, there would have to be testimony that he actually suffered from the mental disorder of paraphernalia. My point is that in order for the state to sustain a burden and place your client into an institution, they had to prove that he had some sexual dysfunction and that he would probably, within a reasonable degree of medical certainty, probably act on it in a criminal way. What they would have to prove is that there was a mental disorder, and because of that disorder, it's substantially probable that he would engage in acts of sexual violence in the future. So I guess what I'm saying is, it isn't that you can say... You've narrowed my point to sexual criminal violence and not just drinking alcohol underage or stealing a car. Right. So I guess what I'm saying is, under the Act, you can't say, because of this provisional diagnosis, it's substantially probable that he'll engage in acts of sexual violence. It's not what the Act provides. The Act provides that there must be testimony regarding an actual mental disorder, and because of that mental disorder, it's substantially probable that the respondent will engage in acts of sexual violence. Because... Only because of that particular disorder? There can't be other factors that would be relevant to determining whether or not he would re-offend? You're saying only that particular diagnosis has to be linked to the re-offending? No. Okay. There could be multiple things, of course. Right. So why wouldn't then the risk... Why wouldn't then the provisional diagnosis be relevant to that... Why wouldn't it be one of the other multiple factors? Why couldn't it be? I see what you're saying. What I would say to that is, is the State could put on evidence of multiple mental disorders, paraphernalia, pedophilia, others. I see what you're saying. But each, as to any one, because of that under the language of the Act, because of that mental disorder, the expert would have to say it is substantially probable that the respondent will engage in acts of sexual violence. So to say it a different way, in what way would this be admissible? My position would be this. The experts would have to say, we find, to a reasonable degree of psychiatric certainty, this person suffers from pedophilia. Because he suffers from the mental disorder pedophilia, it is substantially probable that he will engage in acts of sexual violence. Second, because he actually suffers from the mental disorder of paraphernalia, there was no such testimony. Because of that, it's substantially probable that he will engage in acts of sexual violence. What is paraphernalia? Well, paraphernalia, here we go. Recurrent, intense, sexual, arousing fantasies, sexual urges, or behaviors generally involving, one, non-human objects, or two, the suffering or humiliation of one's self or one's partner, or three, children or other non-consenting persons that occur over a period of at least six months, it's my understanding. That is what paraphernalia is. So. Well, does that cover the entire ball field, or is it just covering between first and second? It seems like it may cover pedophilia. It may cover nymphomania. It may cover almost every sort of sexual distinction. It would be my position that the court, this court or the trial court could have said, you know what, that does basically cover pedophilia if the experts have said that they could find to a reasonable degree of psychological certainty that he actually suffered from paraphernalia, because they could not so find, and Dr. Levinson was very clear that he could not find to a reasonable degree of certainty that he suffered from paraphernalia, because that was their testimony. Well, that's only because of the time limitation, not that they couldn't find that he suffered from that for the six-month period. Or for whatever the reason. I mean, under the act, you need a testimony as to a mental disorder, not a mere provisional diagnosis, not anything short of that. So that is my main contention. Are you challenging the diagnosis of pedophilia? No. Are you challenging the diagnosis of antisocial personality disorder? By way of this appeal, no. All right. Then what, if the doctors came to this conclusion but could not, on the paraphernalia, but could not plug the last factor in, which is time, but they used it in their own basic process to come to their conclusion that he should not, that he was sexually dangerous, why is it inappropriate for the jury to know that? It's inappropriate for the jury to know that because the General Assembly has determined that a person would only be subject to commitment if a mental disorder, rather than a provisional diagnosis or anything less than a mental disorder, only if a mental disorder is substantially probable that a person will commit future acts of sexual violence. But there are two of those that weren't determined. Right, right. Exactly. So what the trial evidence should have been was merely as to those two mental disorders, antisocial personality disorder and pedophilia. Beyond that, it is beyond what the act contemplates. It's beyond what would be permitted to be considered by the jury. And I did cite the case of People v. Solis, somewhat different factually, obviously. But under Solis, you had a situation where there was an effort to introduce blood evidence, blood alcohol evidence, essentially. The defendant tried to exclude that at trial because the state was going to call a witness to basically say, well, our reason we relied upon this, admissible or not, and I find that the blood alcohol was less than such. Now, we all know that an expert can, of course, testify as to matters that are not in evidence under Wilson v. Clark. But I think the case I cited of Solis speaks to a limit to that, that you can't backdoor something in that's expressly not admissible. And in Solis, the blood evidence was not admissible pursuant to statute. Here I am suggesting testimony as to an almost mental disorder, a provisional mental disorder, something close to a mental disorder. That is also barred by statute because the statute, the SVP Act, explicitly states what a mental disorder is. And that does not include a definition or anything short of an actual mental disorder. It doesn't include a mere provisional diagnosis. So my client is clearly prejudiced regarding this additional testimony regarding paraphilia. The jury was clearly notified by the testimony of the two doctors, or at least by Dr. Levinson, that he couldn't state as a matter of his profession that he was suffering from this, but he was concerned or there was some evidence of this. That's generally how it came out, wasn't it? Right, right, right. I'm not saying that the testimony came out that he actually did suffer from it, but that is not my position. I concede, and it's true, that the testimony from the, well, it was two things. Dr. Levinson did concede that he could not find to a reasonable degree a certainty that my client suffered from paraphilia, and I think that Quackenbush said he could find a reasonable degree of certainty that there was a provisional diagnosis of paraphilia, which I think that twist by Dr. Quackenbush, frankly, does confuse the issue a little bit. I think your point is better taken when you look at the testimony of Dr. Levinson, but looking at the testimony of Dr. Quackenbush, who puts that added twist to it, I think that did, frankly, confuse the jury a bit. And is that where the prejudice is, or where is the prejudice? As to both. If there were limiting, weren't there limiting instructions to you that were given by the judge? It would be my position that the prejudice is in this additional information being piled on, essentially, when it is not a mental disorder, especially when you had Quackenbush saying to a reasonable degree of certainty I find it's merely a provisional diagnosis. I think that was very confusing to the jury and to anyone, and to have this added in when he did not suffer from that mental disorder and when there was no provision in the law to permit that to be considered towards the end of whether or not someone would engage in future acts of sexual violence, I think it would prejudice my client to have that additional information presented to the jury. Okay. And one of your other points that you had mentioned earlier, how is the fact that defendant worked at Toys R Us an opinion that should have been disclosed? Okay. Under 213, and there's no dispute that there were interrogatories that issued, and what that should have required is the disclosure of that opinion. Under 213F, and here we're dealing with a controlled expert witness. Clearly it's not a lay witness. It's not an independent party witness. What the state needed to do is identify the subject matter in which the witness will testify, the conclusions and opinions of the witness, and the basis, therefore, the qualifications, and any reports, and corral those additional two points. Under 213G, the testimony of the witness is limited, again, given what has actually been produced. But now wasn't this a fact as opposed to an opinion? The fact that he worked at Toys R Us? I guess that was the thrust of my question. I'm sorry. The fact that he worked there was identified, that that's true. But the fact that Dr. Quackenbush would go on to say that because of this he was not following rules, because of this he was acting recklessly, because of this I'm considering that this was a place heavily frequented by children. Looking at this fact, I'm considering against him that he was a convicted sex offender. Looking at this fact, the access to victims was significant. None of that was disclosed. All that was disclosed is that he worked there. Where that ball would be picked up from and taken to was not disclosed. So that is the issue regarding 213F. But it isn't enough to give you advance warning that something may come, what 213F is calculated to prevent. And the state acknowledges in their brief that it is to prevent unfair surprise. If it wasn't, okay. Well, your client knew he worked at Toys R Us. And assuming that there had been disclosure or investigation, counsel knew that. And he is a sex offender. If that's noted and everybody knows that, why don't you go one step beyond and depose to find out what significance that has? Well, clearly a deposition could have been taken that was the respondent's right. But the ability to take the deposition doesn't excuse the failure to disclose under 213F if you are to be presenting that testimony. I'll go back to the earlier thing you said. And I'll agree that obviously everyone knew where he worked to the point where this was a subject of a motion to eliminate. So obviously we knew it was out there. But what we had in the reports up to that point, obviously, is just that fact that was out there but nothing beyond. And obviously given the nature of the trial, the nature of the case, one could see how a jury could take that fact and run with it, regardless of any expert tying it up. And there was no information in a report tying that up to the additional things that Dr. Quackenbush was going to say. So if it had been mentioned in passing that he worked there, stop, and nothing else said, then it isn't as much an issue of prejudice. But because that fact was taken and linked up to all these additional opinions, that is what caused the problem. What about the fact that he was given the other test, testing that isn't really in contention here? But I have to assume that that gave the doctor some information about his inclinations and recklessness and maybe not looking for victims. But there was more than just that piece of evidence that Toys R Us and because of that. The Toys R Us was tied into, what is it, the MnSTATs or I can never remember the names of those tests. MnSTATs. You know, all of those things were part of this process. True. And so are you saying 213G requires that they specifically say this issue, Toys R Us, is where we're getting this from? Or is it really this testimony that's in the record and apparently the jury heard was that he was tested, that he had had this employment, that he had other problems when he was released? All of these things were taken into account. It wasn't in a vacuum. Well, I guess what I would fall back on is the language of 213F itself, which states that the conclusions and opinions of the witness and the basis, therefore, that is what must be disclosed. And when you have what the expert wound up going forward with, when all we had from the report was he worked at Toys R Us, period. Without all that additional information, without saying, and I relied upon that in finding A, B, C, D, E, F, that could have very easily been put in the report. It was not. And the rules very clearly does not state that. That's excused by the ability to, after the fact, if you wish, take a deposition of the witness. Counsel, you'll have some additional time to respond. Okay. Thank you. Thank you. Ms. Wong? Good morning. Good morning, Your Honors. May it please the court, counsel. My name is Sherry Wong, and I'm an assistant attorney general here on behalf of the people of the state of Illinois. Your Honors, this court should affirm the judgment of the circuit court for the following two reasons. First, the trial court did not abuse its discretion in denying respondents' motion in limine and admitting evidence regarding respondents' provisional diagnosis of paraphilia. Respondents' employment at Toys R Us, and respondents' non-sexually violent criminal history. And second, even if this court finds the trial court erred in allowing any of this evidence to come in, any error was harmless, because the people presented overwhelming evidence that the respondent is a sexually violent person. Well, let's talk about that. If there is such overwhelming evidence, why would you, I'll use these terms now, clutter the record with a provisional diagnosis? May I just add to that? Yes. This was the thrust of mine. A little bit more specifically, wasn't there already sufficient evidence of the defendant's high risk to re-offend based on the testing that Justice Hutchinson referred to a couple minutes ago, the respondent's scores on these tests, the tools that the doctors performed? There was, Your Honor. There was ample evidence that the respondent's mental disorder of pedophilia made it substantially likely that he would sexually re-offend. And the respondent's risk of re-offending was corroborated by his high scores on the actuarial tests, by his failure to complete sex offender treatment, by his deviant sexual urges. All of this did come in. What was also relevant to this element was the fact that there was this provisional diagnosis of paraphilia. The experts testified that they considered the fact that the respondent could potentially suffer from more than one mental disorder as a factor on which they relied in determining whether or not the respondent was substantially likely to sexually re-offend. The fact that he potentially suffered from both pedophilia and paraphilia was probative because it demonstrated that the respondent had a wide pool of victims against whom he could re-offend. Not only had he had convictions against four and a five-year-old boy and girl, it also demonstrated that the respondent could potentially sexually re-offend against adult women as well. And both experts testified that even though it was only a provisional diagnosis, the jury was made perfectly clear about the limitations of this provisional diagnosis. They were also made aware that it was relevant to that third element as to whether or not he was substantially likely to sexually re-offend. They were aware that the people were not presenting the provisional diagnosis to show that he actually suffered from paraphilia. The jury was aware that the people were introducing evidence as to the respondent suffering from pedophilia. That was the qualifying mental disorder. And the respondent agrees. He's not questioning that the respondent suffers from pedophilia or that the respondent suffers from antisocial personality disorders. Those mental disorders could be the qualifying mental disorders under the Act. Okay. But what about the language of the statute that counsel referred to earlier that says that and who is dangerous because he or she suffers from a mental disorder, that makes it substantially probable that the person will engage in acts of sexual violence? The Act does state that the people have to prove that the respondent currently suffers from a mental disorder. And the people proved, and the respondent, again, does not contest, that the people proved that the respondent suffered from pedophilia. Right. But his contention is there is the connection. There has to be the connection between the predicate offense and the risk of re-offending. Sure. I mean, the Act does require that the qualifying mental disorder has to make it substantially likely that he will sexually re-offend. But the doctors testified that the provisional... Wait a second. You said re-offend. Are you saying re-offend in the sense that he's going to commit pedophilia? Or do you mean re-offend in the sense that he's going to commit a crime that is related to a sexual act? Re-offend meaning that he has to... There is a substantial likelihood that he will commit another future act of sexual violence. Which may not necessarily be pedophilia. It may not necessarily be pedophilia. It could be related. It could be a sexual offense against an adult female, which would encompass the provisional paraphilia diagnosis. Is paraphilia part of or mutually excluded, or I should say excluded, from the definition of paraphilia? The doctors testified that pedophilia is a specific form of paraphilia. So paraphilia is defined as a mental disorder where an individual over a six-month period experiences deviant sexual urges, fantasies, behaviors. As the paraphilia in this case would be towards non-consenting individuals. And that the respondent had acted upon these sexual urges. With respect to pedophilia, over a six-month period the respondent has to experience these deviant sexual urges towards prepubescent children. And that he acted on these urges. And in this case there was ample evidence that the respondent had committed acts of sexual violence. He had a predicate sexual offense towards a prepubescent child. It was a five-year-old child. Am I correct? Did you say paraphilia related to non-consenting humans? It could be. Could it be non-consenting animals? In the DSM, if the experts said that that was a, if that was something that the experts felt was encompassing. Actually, I don't know whether animals consent or not. Right. But the point is that there are laws against nature, so to speak. And so if paraphilia relates to sexual fantasies, is it defined only as to humans? Or does it cover any acting out that may be deemed to be a sexual act that is also a crime? Which would mean? Well, in this case the doctors testified it was deviant sexual urges towards non-consenting individuals. So in this case the doctors said it was towards adult women. So it would be humans involved. Well, I think I read that necrophilia also fits into paraphilia, and that would relate to whether or not somebody was consenting or not. Well, that would be a different definition. In the DSM, necrophilia would be, I'm not quite certain of the exact definition, but deviant sexual urges towards, I believe, would be dead corpses. So that, I think, is also another mental disorder from which the respondent could suffer under the act. But here the experts testified that they relied on this provisional diagnosis as to the third element. They also testified that this type of diagnosis is regularly relied upon by experts in their field, and because it is regularly relied upon, the trial court did do the balancing test that it's required to do. It found that the evidence was probative, and that the probative value of that testimony was not substantially outweighed by the danger of unfair prejudice to the respondent. But the diagnosis is regularly relied upon. I understand that. The provisional diagnosis is not regularly relied upon, is it? That's not what the trial court found. I think the experts testified that a provisional diagnosis is regularly relied upon as being relevant, as something that they can consider in deciding whether the respondent is substantially likely to commit future acts of sexual violence. But based upon the argument and the discussion we've just been having, I think we go to counsel's next point that even if we aren't worried about what the statute says, what about the fact that it's piling on? When he is not, it's a provisional diagnosis, it is not needed in this case. And why the doctors, I think, could easily say there are other things that we have considered, but not appropriate at this time. I mean, it's clear that the state pulled this diagnosis out of them. It was what they were going to talk about. Why did it have to be there? Well, I'm not sure that the state pulled it out of the experts. When Dr. Levinson did his initial evaluation of the respondent without any of his own independent neutral evaluation, he looked at all the documents, he looked at the respondent's master file, and based on his review, he diagnosed three concrete mental disorders and also this provisional diagnosis of paraphilia to be thorough. And then Dr. Quackenbush, when he did his own evaluation, also corroborated Dr. Levinson's report. But what I'm saying is the state knows the law. We'll presume the doctors don't know what 213FG or whatever requires or what the statute for confinement requires particularly. The state does. Why then did the state go there, maybe not pull it out of them, why did the state go there in terms of this testimony when you had paraphilia and you had antisocial personality disorder? I agree, Your Honor. There may have been extra evidence that was not needed. But this court in Allen said that the people are entitled to introduce all relevant evidence that is material to their burden of proof. And here the people had to prove all three elements. They had to prove in particular that the respondent was substantially likely to sexually reoffend. Is a provisional diagnosis, is it the foundational basis or can it be the foundational basis for an expert's opinion that within a reasonable degree of medical or psychiatric certainty that the person is going to reoffend? Because if it isn't, I don't know why it was presented. The experts testified that to a reasonable degree of scientific certainty, a provisional diagnosis or respondent likely suffered from paraphilia. But they couldn't definitively confirm that because they didn't have sufficient information as to the six-month requirement. But they did testify that to a reasonable degree of scientific certainty that he likely suffered from paraphilia and that that was one factor on which they relied to their opinion that he was substantially likely to sexually reoffend. It sounds like what you're saying is that people can be sent away merely on provisional opinions. Oh, no, Your Honor. We would not be arguing that a provisional diagnosis would be sufficient to satisfy the mental disorder requirement. No, it wouldn't be if you just indicated that somebody could testify confidently that within a reasonable degree of psychiatric or medical certainty that somebody would reoffend. It would be relevant as to whether or not the respondent was substantially likely to sexually reoffend. It would not be admitted to satisfy the second requirement that the people are required to prove, that is, whether he suffered from a mental disorder. Here, the people presented evidence showing that the respondent suffered from the qualifying mental disorder of paraphilia and that one of the many factors, and there were many factors, that this was only one. So even if we take out the provisional diagnosis, there were many other factors, as Your Honor has noted, that indicated that the respondent was substantially likely to sexually reoffend. His scores on the actuarial instruments, his failure to participate in sexual intercourse. Doesn't the term reoffend imply that somebody is reoffending? And if they're reoffending, they're doing something that they did before, which was supposedly an acting out of a criminal nature based upon some prior sexual disorder or dysfunction? That's correct, Your Honor, and then we should... Then why are you claiming that if they are going to testify to that statement, how it would supposedly relate only to acting out but wouldn't relate to the underlying dysfunctional basis? It would also, I mean, it is relevant as to whether or not the pedophilia comes into play. Respondent had prior convictions here which were, which had a sexual component to them. The 1994 vehicular invasion conviction, the 1994 disorderly conduct conviction, that demonstrated the likelihood that he would commit sexual offenses against adult women. But the experts cannot definitively testify that the respondent satisfied that requisite six-month period. So it is relevant as to whether or not the respondent will commit future acts of sexual violence against pre-pubescent children and also against adult women, and that's why it was relevant to the people's burden of proof. So are you saying the specific facts of these non-sexual offenses were relevant to the element of whether or not the respondent was likely to re-offend even though these were non-sexual offenses because of the specific facts, that's why it was relevant to whether or not he would re-offend in a sexual manner? It is relevant to not only whether he is substantially likely to sexually re-offend but also whether the respondent suffered from the mental disorder of antisocial personality disorder. The experts can testify that in diagnosing antisocial personality disorder, they considered the respondent's entire criminal history, including his non-sexually violent criminal history, because those arrests, any history of criminal activity is relevant to antisocial personality disorder, and then it would also go to that third element of whether he is substantially likely to sexually re-offend. Was this provisional opinion or diagnosis based upon the antisocial behavior that you were talking about, or was it based on what I thought you said earlier, that it was based upon the, within a reasonable degree, a probability of re-offending? It could be both, Your Honor. The people only have to present one mental disorder under the Act, and the respondent has agreed that he is not contesting the jury's finding on the pedophilia mental disorder or the antisocial personality disorder. The people only have to present a qualifying mental disorder and that that mental disorder made it substantially likely that the respondent would commit future acts of sexual violence. And here the people presented more than ample evidence that the respondent suffered from pedophilia and antisocial personality disorder. Did the jury verdict contain the elements which you just described, which is a finding either that the person was going to re-offend based upon a sexual mental disorder or based upon an antisocial disorder? The jury was instructed that they had to find a mental disorder, and the people presented evidence that pedophilia was a mental disorder that could be a qualifying mental disorder under the Act, and that also antisocial personality disorder could be a qualifying mental disorder. Now, the people made clear during their closing arguments that they were mainly relying on the pedophilia as the qualifying mental disorder. But as to Your Honor's question regarding the non-sexually violent criminal history, that was relevant as to whether he suffered from antisocial personality disorder and his likelihood of re-offense. So even if the jury did not find that he suffered from antisocial personality disorder, it was relevant to whether or not he was substantially likely to sexually re-offend. Was the provisional diagnosis based upon pedophilia and iterated therein, or was it based upon the antisocial behavior and stated therein? The provisional diagnosis of pedophilia was related, was relevant to the third element, which is whether he was substantially likely to sexually re-offend, likely in relation to the pedophilia diagnosis. So provisional, are you saying that it's – the provisional opinion was if he is suffering from a mental disorder or an antisocial disorder, then he will re-offend, or he will commit some act that will put him in jail. If he suffers from a mental disorder, the fact that he could potentially suffer from another mental disorder makes it substantially likely that he would sexually re-offend. I think what I'm trying to clarify in my own mind, and maybe you can do it or maybe you can't, and that is, is a provisional opinion supposed to be an opinion about one element of the proofs that the State is supposed to provide, or is it a preliminary opinion of all elements that the State is to determine? But it is incomplete because there has to be further information made available to the experts for them to further opine within a real, real good reasonable degree of medical certainty that the person is going to re-offend. It's relevant to the proof that the people have to present as to the third element, which is that he is substantially likely to sexually re-offend. We would not be arguing that it would be relevant to the qualifying mental disorder of pedophilia, or it would not be relevant to us establishing that he suffered from paraphilia as the qualifying mental disorder. Was this argument made in the trial court below during the motion and limited hearing? It was, Your Honor. We argued that we were only introducing the paraphilia diagnosis because it was relevant to that third element of his likelihood to re-offense. We made it clear that we were not introducing it to the jury to show that the respondent suffered from the qualifying mental disorder of paraphilia. And did the court inform the jury of that? I don't believe that the jury was informed of that, but the people never argued during trial that we were presenting the provisional diagnosis of paraphilia to show that he suffered from paraphilia as the qualifying mental disorder. I have two questions. Let's talk about Toys R Us briefly. What is your version of Toys R Us? We argued that the respondent's employment at Toys R Us and the accompanying fact that his employment at Toys R Us demonstrated his bad judgment and also demonstrated his decision to be close to child victims or children so that he could scout out future potential child victims was a factual basis upon which the experts relied in arriving at their diagnosis. And because it was a factual basis and not an opinion, the people were not required to disclose that under Supreme Court Rule 213-F2. But, Doctor, well, one of the doctors clearly said, you know, I'm considering all of these and they are part of my opinion. I mean, when that, when it comes out that way, you may not have thought that's what was going to be said, but once again, why wasn't that included in the interrogatory answers? It just, it makes sense. This is a very serious proceedings. Why are you going to leave something like that out on a technicality? Because that's what we're talking about here. Under Rule 213-F2, the people are only, and these are independent expert witnesses, even though Respondent argues today that they're controlled experts, they're independent experts. And because they're independent experts, the people are only required to disclose the subject matter on which an expert is to testify and the opinion that is expected to be elicited. And here the people disclosed all of the experts' opinions. They disclosed the opinion that the Respondent was substantially likely to sexually reoffend, and they disclosed their opinion that he was a sexually violent person. Each of the separate factual bases upon which the experts relied was not required to be disclosed under Supreme Court Rule 213-F2. The Respondent was fully aware that he was employed at Toys R Us, and discovery did ensue that interrogatories were exchanged. I do believe a deposition was taken of Dr. Quackenbush, and the Respondent never propounded any questions that were designed to elicit this particular factual basis for Dr. Quackenbush's opinion. And because it was only – it was one, as Your Honor noted, one of many factors upon which the experts relied in determining that the Respondent was substantially likely to sexually reoffend. And it was a factual – one of the factual bases, and it was therefore not required to be disclosed under 213-F2. Is bad judgment – he operated – by taking this job, he exercised bad judgment. Is bad – exercise of bad judgment an opinion or a fact? It's a fact, Your Honor. How can it be a fact? It was a – Respondent's employment at Toys R Us is one of the accompanying facts, and the fact – That I agree to, but now what you take from there, that it was reckless, is that a – how is that – is that a fact or an opinion? It was a factor on which he relied, so it would be a – Yeah, but we're talking about the difference in fact and opinions. I agree it's a factor, but you're saying that these are facts that you did not have to disclose. Well, if he exercised bad judgment as an opinion, it is a sign of his recklessness as an opinion, and I think there was a third one, something else. Why weren't those disclosed? It was – it was a – it was an accompanying fact on which the experts relied in arriving at their diagnosis. The fact that he was employed at Toys R Us and the fact that he demonstrated bad judgment. And this is actually a fairly common sense – Why is it bad judgment if you're supposedly a wolf and you want to be around sheep? Well, there's one here who's a – That's not reckless. That's conniving. That's smart. Well, it's also bad judgment. I mean, he's a sex offender. It may be deviant. It may be illegal. But I don't know that it's bad in the sense of when you talk about judgment and logic, to me bad judgment is illogical. This isn't illogical. I don't see it as being illogical at least. It's not illogical. It's actually a perfectly common sense type of inference that a respondent who has been previously convicted of sexual offenses against children would want to work at a Toys R Us where he would be surrounded by children. And because it actually is a fairly common sense fact, a respondent can't really argue that there was any unfair surprise in this case. But even if your – even if Your Honors do disagree that this was actually an opinion that should have been disclosed, the case law is clear that the respondent has to demonstrate that he was actually prejudiced by the people's failure to disclose this information. And the respondent has never alleged, either in his opening brief or this morning to this court, how he was actually prejudiced by the state's failure to disclose. He's never alleged how he would have done anything differently had this information been disclosed prior to when it was in fact disclosed. And because he can't show any prejudice, he can't show that the trial court erred in allowing this evidence to come in. And in addition, he also has to show that this error was harmless. And here again, the people presented overwhelming evidence that the respondent is a sexually violent person. So any error was harmless. Thank you. Do you think any criminal activity is admissible? In other words, let's say that he's in a mortgage scam. How does that relate to whether or not he's going to act out in a dysfunctional way? It could potentially be relevant as to whether the respondent suffered from antisocial personality disorder. The experts would have to testify that they found that to be relevant, and that type of information would be regularly relied upon by experts in the field. Now, the fact that the respondent was engaged in a mortgage scam while he was on MSR from this sex offense would demonstrate that he's not able to comply with the law. He was reckless with his conduct. And the fact that while he's on MSR and committing other offenses demonstrates that he is unable to confine his behavior within the boundaries of the law, and that would be relevant to whether he suffered from antisocial personality disorder. But it would not always have to be relevant. The experts would have to testify that that would be a relevant fact. Thank you very much. Mr. Douglas? Hopefully I won't jump around because we did that just there. Go ahead. I want to clarify one point. The state keeps coming back to this issue of the provisional diagnosis of paraphernalia being relevant because it shows that there is a substantial probability that my client would have engaged in antisexual violence. And I think that misstates what the law actually is and what the law requires. You can't say a certain fact, standing alone, that is not a mental disorder, is admissible because it makes it substantially probable that the person will engage in antisexual violence. Yes, you have to show that there is underlying predicate crime, but then to find that a person is a sexually violent person, quote, because he or she suffers from a mental disorder that makes it substantially probable that the person will engage in antisexual violence, end quote, not because of any other reason. The General Assembly could have said, without getting into whether that would be constitutional or not, you know, there's a crime and it's substantially probable they'll engage in antisexual violence, period. It doesn't say that. What it does say is that because he or she suffers from a mental disorder, that makes it substantially probable that the person will engage in antisexual violence. Therefore, based on the plain language of the statute, you cannot say, read this as say, because he or she suffers from mental disorder, comma, or provisional disorder, comma, or something akin to a disorder, comma, or similar condition, that makes it substantially probable that the person will engage in antisexual violence. The act is, excuse me, what it is, we have to take it that way. Also, I would argue, to address one of your earlier questions and to follow up on what she said, because she referenced a qualifying mental disorder, which I found a concern to make, because the act also wouldn't provide that. You can have one mental disorder, link that up to the probability that a person will engage in antisexual violence, and then, notwithstanding the plain language of the statute, pile on any other information, even if it is not a mental disorder, towards the end of proving that. The act does not so provide. So, who is the act designed to protect? Persons who could be victims of sexual violence? It doesn't say children, it doesn't say adults, it doesn't say family members, it just says, it's talking about sexually violent offenses, correct? Yes, yes. So, as far as who does it protect, these would be the public, I suppose, if that's your point. Well, the public is the given, but... Is it just victims of that type of offense? And if so, why isn't the fact that the doctor's considered other diagnoses relevant to the bottom line that he does suffer from pedophilia and he does suffer from antisocial personality disorder? As to that, you absolutely can. For two reasons, one, the plain language of the statute. As a person is going to be subject to potentially lifelong commitment, obviously the proofs have to match the law that is in effect, the law that's been tested, the law that has been found to be constitutional, and it is this, what we have on the books. Secondly, under Solis, you can't use an expert to backdoor something that you can't introduce to the front door. Just as in Solis, you couldn't use the expert to testify as to blood alcohol results when the underlying blood alcohol test was inadmissible because it's not being in writing. Similarly, if this is not admissible because of the plain language of the act, you cannot backdoor it in using the testimony of either Dr. Quackenbush or Dr. Levinson. But what if, I mean, they both agreed on the two diagnoses, and there may have been more, but the two diagnoses they agreed upon. Pedophilia and antisocial personality disorder? Right. Okay. Now, what if they cannot, under their oath as a doctor as well as a witness, testify to a reasonable degree of psychiatric certainty that he suffers from those without taking into consideration the issue of paraphilia? And I think that's what she said, basically, that in their analysis, in their interview, in their review of documents, in review of history, they believe that this is working there too, and that bolstered for them their opinion, and they're simply offering it as what they relied upon to come to that opinion. I don't think that was the purse, frankly. And secondly, I don't think, from what I follow from the brief and what she just said, is what she said, it isn't that we considered the provisional diagnosis of paraphilia to determine whether or not the person suffered from pedophilia. We didn't consider the proofs that we do not show that the provisional diagnosis of paraphilia was considered towards the end of whether or not, and this seems pretty clear, my client suffered from antisocial personality disorder. Those are very distinct, obviously. What they're trying to say is whether or not it's a mental disorder, even though the statute is pretty clear, let's look at anything that would link up to a substantial probability that a person will engage in an act of sexual violence, whether or not it relates to whether or not that person suffers from a mental disorder, that itself having a precise definition, contrary to the plain, plain language of the act. And my time is run. Did you, or did defense counsel seek a limiting instruction relative to the provisional opinion regarding Ms. Wong? The trial attorneys are yes. Ms. Wong believed that the provisional opinion was to be limited in its substantive effect to the jury, and then she claimed that the arguments weren't made to the jury that it be substantive or that it cover more than what it was. And then I believe I asked if the jury was instructed to that effect. I'm asking you, did you ask for a limiting instruction? I mean, you indicated yes, a limiting instruction was sought, but I don't think it was made clear, the point that you're illustrating, I don't think that was made clear to the jury, and especially in light of Dr. Quackenbush's testimony that he did find to a reasonable degree of certainty that the respondent suffered from a provisional diagnosis. I think that's extraordinarily difficult for someone to parse through, lawyers and psychologists much less laypeople sitting on the jury. I think that very much confused the issue, and I'm convinced, just part of our appeal, that the jury concluded that he suffered from pedophilia. The expert relied on it, so there you have it. And that is contrary to the statute. It's contrary to the appellate court's decisions in Solis. It cannot be admitted at trial. With respect to, I guess, just one more question here, I assume for the moment your position that this was piling on the admission and this was wrong, the admission of the provisional diagnosis. Why was this not harmless error in view of the other overwhelming evidence there was? Well, that's the only, well, that's a determination that you have to make. I mean, what the state's position has been with respect to the 2213F issue, especially regarding the provisional diagnosis, are clearly, clearly, clearly contrary to Supreme Court rules and statutes, clearly. That is the only question that this court has to arrive at. But what I would suggest is, the evidence being what it is in any SVP case, and you add to it, on top of it, an undisclosed opinion, and you add on top of that a suggestion of a mental disorder, which isn't a mental disorder, and you add on top of that crimes which are not sexually violent offenses as are contemplated by the Act, with those things added in, I believe that this court cannot let the judgment of the jury stand. Thank you. Thank you very much, counsel. You both demonstrated a very thorough knowledge of your case. We appreciate that. The court will take the matter under advisement and render a decision.